UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-87 (TJK) |
| : | |
| MICHAEL SPARKS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS COUNTS ONE AND TWO OF THE SUPERSEDING INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Michael Sparks's Motion to Dismiss Counts One and Two of the Superseding Indictment (ECF No. 26) ("Mot."). As defendant notes, this Court has rejected each of the challenges he raises here. *United States v. Nordean,* 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021). Several other judges in this district have also rejected similar (if not identical) challenges. *See United States v. Sandlin,* 21-cr-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021) (rejecting argument that the certification of the Electoral College vote was not an "official proceeding" under 18 U.S.C. § 1512(c)(2)); *United States v. Caldwell*, 21-cr-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021) (same); *United States v. Montgomery,* 21-cr-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021) (same); *United States v. McHugh,* 21-cr-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022) (same); *United States v. Bozell*, No. 21-cr-216 (JDB), 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (same); *United States v. Grider*, No. 21-cr-22 (CKK), 2022 WL 392307, at *5 (D.D.C. Feb. 9, 2022) (same); *United States v. Robertson, et al.*, No. 21-cr-34 (CRC) (D.D.C. Feb. 25, 2022) (same); *United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021) (same, and rejecting argument that 18 U.S.C. § 231(a)(3) exceeds Congress's authority

under the Commerce Clause). There is no reason for this Court to veer from its well-reasoned opinion in *Nordean* and these sister opinions arriving at the same conclusions. The Court should deny the motion in its entirety.

## FACTUAL BACKGROUND

Sparks's role in the January 6, 2021, attack on the U.S. Capitol is described in the statement of facts supporting the criminal complaint (ECF No. 1-1). Sparks was the first of many hundreds of rioters to breach the United States Capitol on January 6, 2021. He climbed through a broken window next to the Senate Wing Door at approximately 2:13 pm. Once inside, he followed a group of men, led by Douglas Jensen, to follow a U.S. Capitol Police officer, who retreated from their approach. The officer ran up a flight of stairs inside the Capitol building in an effort to get help. Sparks followed the group pursuing the officer up the stairs, while Jensen shouted at the officer. Upstairs, the officer found backup, and several police officers assisted him and attempted to stop the group of rioters. They ordered the group to leave, but Sparks did not retreat. Instead, he walked to the front of the group and confronted the first officer they had chased up the stairs. He yelled, "This is our America! This is our America!," as he grew increasingly agitated.

Individuals who know Sparks reported his activity to law enforcement. One reported that he or she was concerned about messages Sparks posted on Facebook after January 6, 2021. In one ominous message, Sparks warned, "A new dawn is coming. Be ready. Just pray and trust in the Lord." He claimed he was canceling his Facebook account and had "give[n] up on democracy." He warned readers to "be ready for a lot of big events. Have radios for power loss etc. Love every body[.]"

On February 5, 2021, a grand jury returned an indictment charging Sparks with civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Two); entering or remaining on restricted building

or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Three); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Four); impeding ingress and egress in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); violent entry and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Six); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Seven); impeding passage through the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(E) (Count Eight); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Nine). ECF No. 5. On November 10, the grand jury returned a superseding indictment with the same counts. ECF No. 22. Sparks filed this motion on February 2, 2022, seeking dismissal of Counts One and Two of the superseding indictment.

## **ARGUMENT**

Sparks's challenges to Count One (civil disorder, in violation of 18 U.S.C. § 231(a)(3)) and Count Two (obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2)) lack merit.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Its "main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Ballestas*, 795 F. 3d 138, 148–49 (D.C. Cir. 2015) (citation omitted). It need not contain all the facts the government will present to prove its case at trial, and "'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.1989)).

3

Before trial, a criminal defendant may move to dismiss a count of the indictment based on a "defect in the indictment" including the "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). Because dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury," however, "dismissal is granted only in unusual circumstances." *Ballestas*, 795 F. 3d at 148 (internal quotation marks omitted). When considering a challenge to the indictment, "a district court is limited to reviewing the *face* of the indictment"; the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks omitted); *United States v. Safavian*, 429 F. Supp. 2d 156, 159 (D.D.C. 2006) (noting that a Rule 12(b)(3)(B) challenge is limited to the "four corners of the indictment"); 1A Wright & Miller, FEDERAL PRACTICE & PROCEDURE, CRIMINAL, § 195 (5th ed.) ("Rule 12 was [not] intended to permit 'speaking motions,' that is, motions challenging an indictment's sufficiency based on facts that are outside the pleadings.").

The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). Only in certain circumstances, where the government "has made a full proffer of evidence" or the parties have agreed to a "stipulated record," should the court look outside the four corners of the indictment to consider dismissal. *See United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005); *accord United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000)("[u]nless there is a stipulated record … a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence"). On the other hand, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259, 1263 (10th Cir. 2010) (Gorsuch, J.) (noting that the proper avenue for an as-

4

applied constitutional challenge is a post-trial Rule 29 motion).

**II.**

Section 231(a)(3) (the civil disorder statute) criminalizes any "act" (or attempted act) to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder." 18 U.S.C. § 231(a)(3). The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). For the statute to apply, the civil disorder must "in any way or degree obstruct[], delay[], or adversely affect[] commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." *Id.*

The superseding indictment in this case alleges both alternative violations of the statute: first, that the civil disorder impacted "commerce or the movement of any article or commodity in commerce[,]" *and*, in addition, that the civil disorder impacted "the conduct and performance of any federally protected function." ECF No. 22, at 2. Sparks argues that the indictment is defective in both respects, but neither claim has merit.

Sparks's complaint that the indictment does not properly allege a "federally protected function" that was impacted by the civil disorder is incorrect, and this aspect of his motion must be denied.

The indictment here alleges each of the required statutory elements. First, that Sparks acted "to obstruct, impede, and interfere with a law enforcement officer" performing his official duties. Second, that this was "incident to and during the commission of a civil disorder[.]" And third, that the civil disorder "in any way and degree obstructed, delayed, and adversely affected" two things—

5

that is, (a) "commerce and the movement of any article and commodity in commerce[,]" and (b) "the conduct and performance of any federally protected function." The indictment does *not* allege that the "federally protected function" is, or is only, Congress's certification of the Electoral College vote. ECF 22, at 2. Sparks is simply wrong in his characterization of the indictment; his claim goes beyond the four corners of the pleading and is therefore not properly raised in a motion to dismiss under Rule 12(b)(3)(B)(v). To the extent defendant's motion could be read to argue that the evidence he anticipates at trial will be insufficient to state an offense under § 231(a)(3), that argument is premature, and should be made under Rule 29 after the close of the government's case. *See Pope*, 613 F.3d at 1263.

Moreover, putting aside the merits of Sparks's argument that the certification of the Electoral College vote was not a "federally protected function," this argument overlooks (1) the many federally protected functions that the government may prove were obstructed, delayed, or adversely affected (including the protection of the Vice President by the U.S. Secret Service and the protection of the United States Capitol building and its grounds by the U.S. Capitol Police), and (2) the effect of the civil disorder on commerce (discussed in the next section).

This Court has already found that the protection of the Vice President by the U.S. Secret Service is a federally protected function for purposes of section 231(a)(3). *Nordean,* 2021 WL 6134595, at *15 ("the federally protected function with which the civil disorder interfered was the Secret Service's statutorily required protection of the Vice President and Vice President-elect"). For the same reasons, the Capitol Police's statutory obligation to protect the U.S. Capitol is also a federally protected function.[1] Ample evidence to be presented at trial will allow the jury to find

---

[1] Under 2 U.S.C. § 1961, the Capitol Police "shall police the United States Capitol Buildings and Grounds," and shall do so "under the direction of the Capitol Police Board." The "purpose" of the Capitol Police Board, in turn, is "to oversee and support the Capitol Police in its mission." Pub. L. No. 108-7, div. H, § 1014(a)(1). Because an agency includes any "board," it would include the

that the civil disorder of January 6 "in any way or degree obstruct[ed], delay[ed], or adversely affect[ed]" the "conduct or performance of any federally protected function."

Finally, defendant's suggestion that he must have personally interacted with Secret Service agents to be found guilty of the offense lacks any foundation in the statutory text. Mot. at 6. The statute criminalizes the act of obstructing, impeding, or interfering with "*any* fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder[.]" It does not require the defendant's personal interference with a federally protected function. Instead, it is *the civil disorder*—and not the defendant's act—which must "in any way or degree obstruct[], delay[], or adversely affect[]" the federally protected function. 18 U.S.C. § 231(a)(3). The defendant's act must be designed "to obstruct, impede, or interfere with" that law enforcement officer. *Id.* This Court recognized that distinction in *Nordean*. 2021 WL 6134595, at *14 ("[F]or the statute to apply, the 'civil disorder' at issue has to in some way 'obstruct[ ], delay[ ], or adversely affect[ ]…the conduct or performance of any federally protected function.'") (quoting 18 U.S.C. § 231(a)(3)). The same logic applies here.

As an alternative, Sparks argues Count One should be dismissed because the statute exceeds Congress's authority under the Commerce Clause. This argument is equally without merit. Even if he were correct, the indictment's allegation of interference with a federally protected function would save Count One from dismissal. But more importantly, as the court found in *Mostofsky*, 2021 WL 6049891, the Commerce Clause comfortably authorizes Congress's action in passing section 231(a)(3).

---

Capitol Police Board. And the Capitol Police itself is, as its website describes, a federal law enforcement "agency." *See* https://www.uscp.gov/the-department.

7

The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, Cl. 3. "[I]t is now well established that Congress has broad authority under th[at] Clause." *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012) (opinion of Roberts, C.J.). Among other things, "the Commerce Clause has . . . long been interpreted" to grant Congress authority "extend[ing] beyond activities actually in interstate commerce to reach other activities that, while wholly local in nature, nevertheless substantially affect interstate commerce." *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241 (1980). The Supreme Court's precedents accordingly establish that, "under its commerce power," Congress may regulate the "channels of interstate commerce," "instrumentalities of interstate commerce" and "persons or things in interstate commerce," and "those activities that substantially affect interstate commerce." *Taylor v. United States*, 136 S. Ct. 2074, 2079 (2016) (quoting *United States v. Lopez*, 514 U.S. 549, 558-559 (1995)); *accord Morrison*, 529 U.S. at 608-609; *see also*, *e.g.*, *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005); *Perez v. United States*, 402 U.S. 146, 150 (1971).

Section 231(a)(3) is one of many statutory provisions enacted by Congress to protect the flow of interstate commerce from unwarranted interference. Where a civil disorder is "obstruct[ing], delay[ing], or adversely affect[ing]" interstate commerce or the movement of an item in interstate commerce, Congress sought to provide law enforcement officers and firefighters with the ability to contain and ultimately end the crisis without obstruction from persons like defendant who would impede them. In doing so, Congress acted to protect the channels of interstate commerce, including roads and highways, to protect the flow of things in interstate commerce, and to regulate activity that substantially affects interstate commerce. Section 231(a)(3) thus fits comfortably within all three of the areas of Congressional power identified by the Supreme Court in *Lopez*, *Morrison*, and *Taylor*.

The defendant in *Mostofsky* raised a similar challenge to Congress's Commerce Clause authority to enact section 231(a)(3). 2021 WL 6049891, at *3-*7. In a thorough opinion analyzing *Lopez*, *Morrison*, and opinions from courts around the country, Judge Boasberg rejected this claim. In sum," the court found, "§ 231(a)(3) contains a jurisdictional element that ensures a sufficient connection to interstate commerce in each application." *Id.* at *7. The court also noted that every other court to have analyzed Commerce Clause challenges to section 231(a)(1) have agreed with its conclusion that the statute is a valid exercise of this legislative power. *Id.* at *4, *citing United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *3 (D. Or. Sept. 15, 2021); *United States v. Howard*, No. 21-28, 2021 WL 3856290, at *11 (E.D. Wis. Aug. 30, 2021); *United States v. Wood*, No. 20-56, 2021 WL 3048448, at *6 (D. Del. July 20, 2021); and *United States v. Pugh*, No. 20-73, slip op. at 9 (S.D. Ala. May 13, 2021). Sparks's argument should be denied for the same reasons.

Title 18, U.S. Code, Section 1512(c)(2) prohibits corruptly obstructing, influencing, or impeding "any official proceeding[,]" which is further defined in section 1515 as, among other things, "a proceeding before the Congress." Sparks argues that Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2) because it "was not related to the administration of justice before a tribunal" or "Congress's implied power of investigation in aid of legislation." Mot. at 6. His argument is contrary to the plain text of the statute and every recent decision in this district considering the issue. *See Sandlin,* 2021 WL 5865006, at *3–*10; *Caldwell*, 2021 WL 6062718, at *4–*7; *Mostofsky*, 2021 WL 6049891, at *9–*10; *Montgomery*, 2021 WL 6134591, at *4–*10; *Nordean,* 2021 WL 6134595, at *4–*6; *McHugh,* 2022 WL 296304, at *9; *Bozell*, 2022 WL 474144, at *5; *Grider*, 2022 WL 392307, at *5; *Robertson*, No. 21-cr-34, Doc. No. 63, at 6–9.

9

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House (who are required to read them "in the presence and the hearing of the two Houses"), ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). "That no less an authority than the Constitution of the United States mandates the proceeding's occurrence, *see* U.S. Const. amend.

XII, and that everything from the specific date to the seating arrangements to the time allotted for debate is prescribed by statute, *see* 3 U.S.C. §§ 15–17, only confirms that this was a formal assembly of the Congress for the purpose of conducting official business." *McHugh*, 2022 WL 296304, at *7 (D.D.C. Feb. 1, 2022); *see also Grider*, 2022 WL 392307, at *5 ("the Joint Session of Congress to certify the Electoral College is unambiguously an 'official proceeding' within the meaning of 1512(c)(2)").

That this was a "proceeding before the Congress" flows principally from the statute's plain text. *See Nordean*, 2021 WL 6134595, at *5, *6 (pointing to the text of the statute); *Caldwell*, 2021 WL 6062718 at *4 ("A straightforward reading of that definition easily reaches the Certification of the Electoral College vote."). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term, including its narrow, legal sense of being "'the business conducted by a court or other official body; a hearing[.]'" *McHugh*, 2022 WL 296304, at *5 (quoting *Proceeding*, Black's Law Dictionary (11th ed. 2019)); *see also Nordean*, 2021 WL 6134595, at *5 (noting that while not every "proceeding" under the dictionary definition will be a "proceeding before the Congress," the certification of the Electoral College certainly was, and citing the Constitutional requirements and formality of the convocation).

Sparks cites *United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013), in support of his suggestion that the "official proceeding" must somehow be related to the administration of justice or Congress's implied power of investigation in aid of legislation. Mot. at 6. But *Ermoian* held that an ongoing law-enforcement investigation is not a different kind of "official proceeding"—one before a Federal Government agency—not because it did not involve the "administration of justice," but because the FBI investigation did not involve any "formal hearing before a tribunal[.]" *Id.* at 1172. In any case, *Ermoian* is not persuasive here because "an ongoing law enforcement investigation of a criminal enterprise bears no resemblance, as a matter of form or content, to the

11

official process mandated by the Twelfth Amendment and the Electoral Count Act for certifying the electoral vote for President and Vice President." *Montgomery*, 2021 WL 6134591, at *6; *see also Grider*, 2022 WL 392307, at *5.

Sparks's arguments cannot overcome the plain and unambiguous meaning of the statute. A "proceeding before the Congress" in Section 1515 includes the Electoral College vote certification. All the courts in this district who have recently considered the issue have so held. *See, e.g., Caldwell*, 2021 WL 6062718 at *5 ("Congress did not intend to limit the congressional proceedings protected under section 1512(c) to only those involving its adjudicatory, investigative, or legislative functions. And the court will not add a requirement to the statute that Congress did not see fit to include."); *Sandlin*, 2021 WL 5865006, at *4 ("[T]he Court will not read an "administration of justice" requirement into "official proceeding.").[2]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Emily W. Allen*
EMILY W. ALLEN, Cal. Bar No. 234961
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, DC 20530
emily.allen@usdoj.gov
(907) 271-4724

---

[2] "[E]ven if there were a quasi-adjudicative or quasi-judicial requirement, the certification would 'pass the test.'" *Nordean,* 2021 WL 6134595, at *12. The certification is "one of the very few congressional proceedings that actually is adjudicative." *McHugh,* 21-cr-453, ECF No. 51, at 17.