**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____   )
                                  )
                                  )
**UNITED STATES OF AMERICA,**      )
                                  )
         **v.**                    )      **Criminal Action No. 21-087 (TJK)**
                                  )
**MICHAEL SPARKS,**                )
                                  )
               **Defendant.**      )
_____   )

**REPLY TO RESPONSE OF THE UNITED STATES**
**TO DEFENDANT'S MOTION IN LIMINE AND**
**CLARIFICATION OF THE SCOPE OF SAME**

Comes the defendant, by counsel, and for his reply to the response of the United States

[ECF DN 94] to his motion *in limine* herein [ECF DN 87] says as follows.

**Clarification of Scope**

To clarify the scope of that part of defendant's motion *in limine* to exclude evidence

of defendant's lawful firearm purchases on January 2, 2021, and January 10, 2021,

defendant states that he seeks exclusion at trial of all firearm purchases, possession, and use,

not just the purchases of the enumerated firearms on January 2, 2021, and January 10, 2021.

**Reply to the Government's Response**

**The Firearms**

In its response, the United States argues that even though defendant did not possess

or use any firearms on January 6, 2021, the fact that he had purchased firearms on January

2, 2021, and January 10, 2021, is nevertheless probative of his violent intent on January 6, 2021. Further, the government argues that this probative value is not outweighed by any danger of misleading the jury, unfairly prejudicing the defendant, or confusing the issues.

Basically, the government claims that defendant's lawful on-the-books purchase[1] of a Savage Arms .22 caliber rifle[2] on January 2, 2021, and a Taurus M605 revolver[3] on January 10, 2021, are probative of his "corrupt" intent to violently disrupt Congress on January 6, 2021. The government concedes that both purchases were lawful and proper and that defendant did not bring the .22 rifle to Washington, D.C., or have it in his possession on January 6, 2021; and, of course, the Taurus M605 was not even purchased until well after January 6, 2021. Nevertheless, the government argues that this is evidence of defendant's "consciousness of wrongdoing" specifically on January 6, 2021, and somehow indicative of an intent to generally engage in violence against the government and foment a "civil war".

The government's stated purpose in introducing this evidence is to show the jury "Sparks's corrupt intent to obstruct the certification of the Electoral College vote on January

---

[1] This was not some surreptitious back-alley purchase of a firearm designed to hide the transaction from authorities. It was a wholly above board purchase from a licensed firearms dealer with all proper ATF forms executed and proper procedures followed to the letter.

[2] Hardly the combat assault weapon the government intimates. The rifle is a .22 caliber small game gun useful only for hunting squirrels, target practice, and the plinking of cans. See https://blog.cheaperthandirt.com/review-savage-model-64-22-rimfire-rifle/ ("This is an ideal small game and training rifle. It is a good piece for training young shooters"); https://www.kentuckyhunting.net/threads/savage-64f-22lr.175702/ ("I bought a Savage 64F last night to use primarily for squirrel hunting.").

[3] Again, a wholly above board purchase from a licensed firearms dealer with all proper ATF forms executed and proper procedures followed to the letter.

6" [ECF DN 94, p. 8] even though the government admits that "no evidence suggests that Sparks took the rifle he purchased on January 2 to the Capitol on January 6." [ECF DN 94, p. 9]. The government alleges that the mere lawful purchase and possession of firearms wholly in the Commonwealth Kentucky on January 2, 2021, and January 10, 2021, proves an essential element of the crime, namely that he intended to engage in "political violence" in Washington, D.C., on January 6, 2021, despite never transporting any firearm to Washington, D.C.; never possessing any firearm in Washington, D.C.; and never using any firearm in Washington, D.C.

> His purchase—in the wake of his explicit desire for "civil war" and his declaration that he would die for his views on the Constitution and tyranny, just hours after he circulated information about the proceedings in Congress on January 6 and solidified his travel plans—is clearly relevant on its own, without any need to show that he had a weapon with him on January 6. And likewise, his January 10 purchase was clearly tethered to his ongoing calls for political violence in the aftermath of January 6. Sparks was preparing himself for ongoing political violence when he "g[a]ve up on democracy" and armed himself on January 10.

[ECF DN 94, p. 10]. This is disingenuous. The government's true motives could not be more transparent. The government does not seek to introduce this evidence to show defendant's specific intent on January 6, 2021, in Washington, D.C.—the only time and place relevant to this case. Rather, it seeks to introduce same to attack the defendant's character by painting him in the eyes of the jury as an armed violent authoritarian who is an anti-Biden, pro-Trump, pro-civil war, election denying conservative consumed by the idea that the election was stolen by liberal democrats and someone who—unless convicted by the jury and

removed from society—is prepared to engage in "ongoing political violence in the aftermath of January 6". [Id.]. This is a classic "us vs them" *ad hominem* argument appealing to the virulent mutual antipathy that conservative republicans and liberal democrats feel for each other, which is, regrettably, the lamentable state we find ourselves in today. As the government well knows, this is a negative picture of defendant's character that will find some traction with a jury drawn from a jurisdiction that voted for President Biden over former president Trump by a margin of 92.15% to 5.40%.[4]  Stripped of its pretension, it is an appeal to the jury to convict defendant, not because he is guilty, but because he is someone they revile and should fear.

In a nutshell, the proffered evidence is irrelevant under FRE 401, inadmissible under FRE 402, violative of FRE 404, and runs the real risk of inflaming the jury to defendant's unfair prejudice in violation of FRE 403.

Without question, this evidence fails the first and most fundamental requirement of the rules of evidence. It is irrelevant, in that it does not tend to make a fact of consequence in resolving the charges against the defendant more or less probable than it would be without the evidence. FRE 401. Accordingly, it is inadmissible. FRE 402. As set forth above, the proffered evidence violates FRE 403 because its probative value—which is nil—is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading of the jury. Lastly, the proffered evidence violates FRE 404 in that it constitutes

---

[4] See https://electionresults.dcboe.org/election_results/2020-General-Election.

evidence of defendant's character offered to prove that on January 6, 2021, he acted in accordance with that character.

Regarding this last point, FRE 404 provides an exception under which character evidence can be admitted, subject to FRE 403, if it is offered for any purpose other than character. FRE 404(b)(2). The government invokes this exception. Federal courts in the District of Columbia apply a two-step analysis to determine the admissibility of evidence of character under Rule 404(b)(2). United States v. Loza, 764 F. Supp. 2d 55, 57 (D.D.C. 2011). First, the Court must determine whether "'the evidence [is] probative of some material issue other than character.'" Id. (quoting United States v. Clarke,  24 F.3d 257, 264 (D.C. Cir. 1994)). Any purpose for which such evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character. See United States v. Mahdi, 598 F.3d 883, 891 (D.C. Cir. 2010). If the evidence is determined to be relevant to a legitimate purpose, the Court must then determine whether it nevertheless should be excluded under FRE 403 because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" FRE 403; see United States v. McCarson, 527 F.3d 170, 173-74 (D.C. Cir. 2008); United States v. Clarke, 24 F.3d at 264.

Evidence that defendant lawfully purchased and possessed firearms before and after January 6, 2021, which he did not transport to, possess in, or use at the Capitol or anywhere else on January 6, 2021, is not relevant to any legitimate issue in this case other than defendant's character and is therefore inadmissible under step one of the inquiry. The only

purpose that the United States identifies for this evidence is to support its claim that defendant acted with corrupt intent under 18 U.S.C. §1512(c)(2) on January 6, 2021. Evidence of the lawful purchase and possession of these firearms—or any others—prior and subsequent to January 6, 2021, cannot be relevant to prove his intent on January 6, 2021, because defendant did not possess, transport, carry, or use them during the course of the alleged crimes on that date. Such evidence serves no other purpose than to show that defendant has a violent and dangerous character and, therefore, must have acted in conformity with that character on January 6, 2021. The prior and subsequent purchase and possession of these firearms—or any others—may not be admitted for that purpose. FRE 404(b); Hudson v. District of Columbia, 558 F.3d 526, 529-32 (D.C. Cir. 2009) (remanding for new trial because district court erroneously allowed counsel to question witness about his prior bad acts to show conformity therewith).

Even if the Court were to find that the proffered evidence serves a legitimate purpose other than to establish defendant's character, that is not enough. The Court must also find that the probative value of the evidence outweighs its potential prejudicial effects. FRE 403. See, e.g., United States v. Dabish, 708 F.2d 240, 242 (6th Cir.1983); United States v. Vincent, 681 F.2d 462, 465 (6th Cir.1982).  This is because even if "other acts" evidence is arguably admissible for one of the delineated exceptions set out in FRE 404(b)(2), there is still great danger that a defendant will be convicted solely because of the "other bad acts

evidence," and not because of the proof of the charged crime. Such is the case here for the reasons set forth above.

In sum, The government's attempt to introduce the proffered evidence is a thinly veiled attempt to do exactly what FRE 404 prohibits—to offer proof of defendant's bad character in order to prove he acted in a similar fashion in this case. In <u>United States v. Himelwright</u>, 42 F.3d 777 (3rd Circuit 1994), a case very close to the facts of Mr. Sparks's case, defendant was charged with interstate threats and extortionate demands, offenses for which intent to injure another is an element. The government sought to introduce evidence of Himelwright's mere possession of two firearms to prove his intent to commit the charged crimes. Like in Mr. Spark's case, the government admitted that he had not used the weapons but argued that their possession alone showed his "general intent to threaten injury" and that he had the capability to carry out his threats. <u>Id</u>., at 783. Defendant objected pursuant to FRE 404 and FRE 403. The trial court allowed the testimony. The Third Circuit reversed.

> **Despite our characterization of Rule 404(b) as a rule of admissibility (citation omitted) we have expressed our concern that, although the proponents of Rule 404(b) evidence "will hardly admit it, the reasons proffered to admit prior act evidence may often be potemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character."** *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir.1994) (quoting *Sampson*, 980 F.2d at 886). Thus, when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged. *Jemal*, 26 F.3d at 1272. But even where the proffered evidence tends to prove some fact besides character, admissibility depends upon whether its probative value outweighs its prejudicial effect. [Footnote omitted] As a result, once the proponent

articulates a permissible purpose under Rule 404(b), the district court must weigh the probative value of the evidence against its potential to cause undue prejudice. *Id.* at 1272.

. . . .

**[W]e conclude that the forbidden purpose which lay barely beneath the surface of the government's argument--the likelihood that Himelwright committed the offense based on an inference of his intent drawn from evidence pertaining to his character (his possession of two firearms)—renders the evidence inadmissible under Rule 404(b).** Id. See also *Archibald*, 987 F.2d at 185; cf. *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). . . .

. . . .

But even assuming arguendo that Himelwright's gun possession is marginally relevant to the specific intent to extort, we nevertheless find that the probative value of the firearms evidence was substantially outweighed by the resulting prejudice to Himelwright. . . .

. . . .

Our review of the record compels us to conclude that even if the firearms evidence had been admissible under Rule 404(b), a proper balancing of its probative value against its prejudicial effect under Rule 403 would have rendered it inadmissible in any event.. . .

Initially, it is impossible to overlook the powerful impact of this type of evidence on the questions whether the telephone calls were, indeed, sufficiently threatening to satisfy the elements of section 875(c) beyond a reasonable doubt, and whether Himelwright made them with the intent to extort a job transfer from the Postal Service, in violation of section 875(b). The words Himelwright uttered to the answering machines; the statements he made to Dennis; the statements he made to Officer Lloyd; the statements he made to the Postal Inspectors; and the circumstances surrounding his failed attempt to secure a transfer all speak for themselves. **Without question, a rational chain of inferences could be drawn from these evidentiary links, each of which bore some logical relevance to the criminal charges Himelwright faced. But to compound that evidence by asking the jury to draw inferences as**

**to Himelwright's intent from his purchase and possession of the two firearms was, we think, to invite a degree of prejudice which outweighed the probative value of that evidence under a proper balancing pursuant to Rule 403.**

United States v. Himelwright, 42 F.3d 777, 781-785 (3rd Circuit 1994) (emphasis added).

The proffered evidence should be excluded.

### The Alleged Wearing of Body Armor

Even if the Court finds that testimony from trained police officers "about how a protective vest looks and fits underneath an outer layer of clothing" [ECF DN 94, p. 12] and that Mr. Sparks was wearing one on January 6, 2021, is not opinion evidence based on "specialized knowledge" within the meaning of FRE 701, such evidence falls into the same category as his possession of firearms discussed above. The wearing of an armored vest—a quintessentially passive *defensive* device as opposed to a weapon—cannot be deemed relevant to whether or not defendant acted with the requisite corrupt violent intent on January 6, 2021. Characterizing Mr. Sparks's  wearing of the vest as his somehow being "prepared for the riot that came to pass" does nothing to establish his intent to engage in violent obstruction himself. If anything, it is probative of the fact that he sought to avoid violence against himself, rather than deal it out to others. As with the firearms, mere possession of an armored vest is not indicative of an intent to engage in violent conduct. The evidence fails to satisfy FRE 401.

Its only purpose is to underscore the government's mantra in this case, i.e., Mr. Sparks has the character of a violent individual and acted in accordance with that violent character

9

on January 6, 2021. FRE 404 prohibits such evidence. If the Court concludes that it is admissible for one of the FRE 404(b)(2) exceptions, it should be excluded under FRE 403.

### The Defendant's Observations of Howe

Defendant's actions on January 6, 2021, were not hand in glove with those of Mr. Howe, and equating them is unfairly prejudicial. The government alleges that since Howe carried goggles and a respirator, he therefore expected violence and prepared accordingly. Mr. Sparks possessed no goggles, no respirator, no offensive weapons (guns, knives, clubs, repellant spray, etc.) or any objects that could be used as weapons (flag poles, canes, etc.). Howe attacked officers, used makeshift weapons, and destroyed property. Mr. Sparks did none of these things. Defendant should not be painted with the same brush as Howe. Equating their respective intents merely because they traveled to Washington, D.C., together and then went their separate ways once arriving on Capitol grounds is not probative of any material fact and is unfairly prejudicial.

### Defendant's Communications with Howe

Whatever arguable conclusions can be drawn from defendant's and Howe's communications prior to January 6, 2024, none can be drawn from their post-January 6 communications (some over 1½ years after January 6, 2024) other than to show that they both continued to adhere to their anti-government views and their rejection of the 2020 election results. Again, the purpose of this evidence is to impugn defendant's character and unfairly cast him in a bad light in the eyes of the jury. It should be excluded under FRE 403.

**Conclusion**

For the reasons set forth above, defendant moves the Court to grant his motion *in limine*.

/s/ Scott T. Wendelsdorf (Ky. Bar No. 75790)
Federal Defender
629 Fourth Avenue
200 Theatre Building
Louisville, Kentucky 40202

(502) 584-0525
Scott_Wendelsdorf@fd.org

Counsel for Defendant.

**CERTIFICATE**

I hereby certify that on February 14, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Scott T. Wendelsdorf