UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-87 (TJK) |
| : | |
| MICHAEL SPARKS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE PENDING APPEAL**

Defendant Michael Sparks asks this Court to delay the execution of his custodial sentence and allow him to be released pending his appeal of the reasonableness and constitutionality of his sentence. ECF 148 (Def. Mtn.). Sparks has not shown clear and convincing evidence that he is not likely to flee or pose a danger if released, and he has not shown that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in a term of imprisonment less than the expected duration of the appeal process. Moreover, even if he could establish those requirements, he would be eligible only for an order that his detention terminate at the end of his "likely reduced sentence." Under 18 U.S.C. § 3143(b)(1), therefore, Sparks's Motion must be denied.

I.   FACTUAL BACKGROUND

Sparks was the very first rioter to enter the U.S. Capitol building on January 6, 2021. Despite others' screams of "don't go in," Sparks climbed through the broken window next to the Senate Wing Door at approximately 2:13 pm. He ignored the U.S. Capitol Police officer at the window and jumped inside despite a shot of pepper spray to the face. Once inside, Sparks followed a group of men who chased another police officer up a flight of stairs inside the Capitol building. Sparks followed the group pursuing the officer up the stairs, while the mob shouted at

the officer. Upstairs, the officer found backup, and several police officers attempted to stop the group of rioters. The officers ordered the group to leave, but Sparks did not retreat. Instead, he walked to the front of the group and confronted the first officer they had chased up the stairs. He yelled, "This is our America! This is our America!," as he grew increasingly agitated.

Sparks did not find himself at the front of the mob by accident. In the days leading up to January 6, he posted to Parler, "we want a civil war to be clear." That very same day, he bought a 22-caliber heavy barreled semiautomatic rifle and a scope. On January 3, 2021, he posted to Facebook, "It's time to drag them out of Congress . It's tyranny[.]"

Sparks was arrested in January 2021. He proceeded to a jury trial that began three years later, on February 26, 2024. On March 1, 2021, the jury found him guilty on all counts. Following the uncertainty resulting from the impact of *United States v. Fischer* on this case, sentencing was continued to August 27, 2024, and the government moved to dismiss Count One of the Second Superseding Indictment (ECF 39), Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2), after his conviction. At sentencing on August 27, 2024, Sparks was sentenced to 53 months in custody on Count Two, Obstructing Officers During a Civil Disorder in violation of 18 U.S.C. § 231(a)(3); the statutory maximum 12 months in custody on Counts Ten and Eleven, Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and the statutory maximum 6 months in custody on Counts Twelve and Fourteen, Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF 143 at 3.

The sentence was the result of the Court's careful consideration and lengthy explanation. The Court considered the parties' and the Probation Office's views on the U.S. Sentencing

Guidelines, and, after briefing and argument, made findings to support its Guidelines calculation. The Court considered the government's request for an upward departure and found that an increase was warranted under both U.S.S.G. §§ 5K2.7 and 5K2.21. The Court also carefully considered the reasons for a variance, concluding in the alternative that an upward variance was also appropriate. Weighing the sentencing factors under 18 U.S.C. § 3553(a), the Court gave a lengthy explanation at the sentencing hearing for its reasoning that a 53-month sentence was sufficient, but no greater than necessary to achieve the goals of sentencing. This was followed by a thorough written opinion in which the Court set out its sentencing rationale in three pages of text, including with reference to similarly-situated defendants and Sparks's specific conduct. ECF 144. Sparks did not raise any objection to any perceived procedural error in the Court's sentencing determination.

Sparks was not remanded to custody at the sentencing hearing, but instead permitted to report as directed by the Probation Office. ECF 143 at 3. He has not yet begun serving his sentence, and his Motion requests a stay of the Court's order imposing sentence.

## II.  LEGAL PRINCIPLES

"[A] person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" "shall . . . be detained, unless [the Court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . a reversal [or] an order for a new trial." 18 U.S.C. § 3143(b)(1)(B)(i)-(ii). After clearing the first two requirements, a defendant must satisfy section 3143(b)(1)(B), which "requires a two-part inquiry: (1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to [a reduced sentence to a term less than the expected

3

duration of the appeal process]?" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987); *see also United States v. Rivera*, No. 3088, 2023 WL 1484683 (D.C. Cir. Jan. 30, 2023) (*per curiam* order denying a stay of sentence for a January 6 defendant). A "substantial question" is "a close question or one that very well could be decided the other way." *Id.* at 555-56. The standard is "more demanding" than one that merely requires the issue to be "fairly debatable" or "not frivolous." *United States v. Libby*, 496 F. Supp. 2d 1, 4 (D.D.C. 2007).

Where the defendant's challenge on appeal is to the length of his sentence, as here, the Court therefore must find that the defendant has cleared five hurdles before ordering his release: (1) clear and convincing evidence that the defendant is not likely to flee; (2) clear and convincing evidence that the defendant is not likely to pose a danger to the safety of any other person or the community if released; (3) the appeal is not for the purpose of delay; (4) the appeal raises a substantial question of law or fact; and (5) resolution of the appeal in the defendant's favor is likely to lead to a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1). A defendant who satisfies each of these elements is then entitled only to an order that his detention be terminated at the expiration of the likely reduced sentence—not to an order of release pending appeal. *Id.*

The defendant bears the burden of proof as to each of these elements. *Libby*, 498 F. Supp. 2d at 3 ("In enacting § 3143(b), Congress placed the burden as to all elements bearing on whether to grant bail pending appeal on the defendant." (quotations and modifications omitted)).

### III.    ARGUMENT

Sparks has not demonstrated that he is eligible for release pending appeal because he has not met these requirements.

A.  **Sparks Has Not Shown Clear and Convincing Evidence that he is Not Likely to Flee or Pose a Danger to the Community Under 18 U.S.C. § 3143(b)(1)(A)**

Sparks has not carried his burden to prove by clear and convincing evidence that he is not likely to flee or pose a danger to the community. His Motion refers to his compliance with his release conditions, his family connections, and his participation in the community and business. Def. Mtn. at 4-5. But all of these were true on January 6, 2021, before Sparks announced that he "want[ed] a civil war" (Exh. 383) and made plans to storm the Capitol and "drag congress out by there face if need be." (Exh. 414). Sparks's extremism and vitriol continue even to the present day, and he presents a real risk of recidivism. One example, noted in the government's sentencing memorandum, is his response to the President's remarks on the third anniversary of the events of January 6, publicly calling the President "a treasonous piece of scum." ECF 139, Exh. D (January 2024 Facebook post). Even *after* his sentencing, Sparks has taken to Facebook—which he knows to be monitored by the government—to refer to candidate Trump's opponent as an "evil tyrant" in a post shortly after the September 10, 2024, presidential debate was televised (time displayed is Pacific time):



Similarly, on September 12, 2024, Sparks posted an article about statements by Attorney General Merrick Garland with his photo, commenting, "this is what treason looks like."[1] Sparks's rhetoric now, as we face another hotly contested presidential election year that Sparks describes in catastrophic terms, is similar to his online commentary in the weeks leading up to January 6,

---

[1] AG Garland's remarks related to the Department of Justice's commitment to the rule of law and AG Garland's denouncement of violence and threats against Department employees.

2021, and demonstrates that he cannot meet his burden to show clear and convincing evidence that he does not pose a risk of danger to the community. *See United States v. Rubenacker*, 21-cr-193 (BAH), ECF 95 (Order Denying Release Pending Appeal) (finding the defendant failed to present clear and convincing evidence that he was not a danger in part due to his offense conduct on January 6, which included being "among the first fifty people to breach the Capitol building" and "joining a mob that approached Capitol Police Officer Eugene Goodman, greatly outnumbering him; yelling at him; and screaming obscenities at him" (internal quotations and alterations omitted)).

Regarding his likelihood to flee, Sparks deleted his Facebook account when he discovered that he was soon to be arrested, and deleted his text exchanges with his co-defendant. Now, Sparks faces the new certainty of the consequences, knowing that he is imminently facing a lengthy prison term he was unable to avoid through litigation or acquittal. Sparks has not demonstrated that he would not take similar efforts as he already has in the past, to avoid prosecution or to avoid serving his sentence if he were given the opportunity.

    **B.    Sparks Has Not Demonstrated that the Appeal is Not for the Purpose of Delay Under 18 U.S.C. § 3143(b)(1)(B)**

Sparks must demonstrate that his appeal is not for purposes of delay. In his Motion, he merely states that this is so. His grounds for appeal relate only to the length of his sentence, not to the jury's conviction or any claimed error at trial, and Sparks acknowledges that a Guidelines sentence calls for a time in custody. Sparks has not met his burden to show that his appeal is not for the purpose of delaying his required reporting date to the Bureau of Prisons.

    **C.    Sparks Has Not Demonstrated that the Appeal Raises a Substantial Question Under 18 U.S.C. § 3143(b)(1)(B)**

Sparks asserts three grounds for appeal, all of which relate to the well-trodden legal landscape of the reasonableness and constitutionality of the sentence imposed by this Court, and

none of which raise a substantial question. First, he argues that the sentence was procedurally unreasonable because, he asserts, the Court failed to adequately explain the reason for the sentence and did not adequately account for the section 3553(a) factors. Def. Mtn. at 6. This is unfounded; this Court evaluated the evidence presented at trial, lengthy submissions by the parties and the Presentence Investigation Report, numerous letters of support from Sparks's relatives and friends, and an in-person statement from one of the police officers directly affected by Sparks's actions. In a lengthy hearing, the Court heard further argument, recessed to consider the parties' submissions, and resumed the hearing to make a well-reasoned and thorough oral ruling explaining the basis for the sentence and the many sound reasons to vary or depart upward from the Guidelines range. Among many other considerations, the Court found that Sparks's participation in "a shouting, screaming mob of people helped create a real danger to [the] people" in the Ohio Clock Corridor and directly on the other side of the wall—the Senate Chamber itself and the Vice President. 8/27/2024 Sent. Hrg. Tr. at 84. The Court noted that Sparks came to Washington, D.C. with gear that indicated he was "prepared for some kind of confrontation," which is indicative of his intent. *Id.* Aat 86. In sum, the Court found that Sparks engaged in "pretty dark behavior" and "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Id.* at 87-88. This oral ruling was followed by a detailed written statement of reasons setting out further support for the Court's reasoning and ultimate sentence. Sparks failed to object or identify any procedural defect in the Court's sentencing. This does not raise a substantial question of law or of fact.

Second, Sparks claims that the sentence was substantively unreasonable, claiming that the Court "gave an unreasonable amount of weight to punishing [Sparks] for technically being the first person to enter the Capitol on January 6[.]" Def. Mtn. at 6. Again, this is unfounded. Sparks's sentence was reasonable in light of his offense conduct, the sentence imposed on

7

similarly-situated defendants, and his Guidelines range. In its oral ruling, the Court considered that as one piece of a host of other facts about the nature of Sparks's offense. 8/27/2024 Sent. Hrg. Tr. at 85-86 (discussing Sparks's discussion of violence and planning for January 6); *id.* at 87 (describing that Sparks waved on the crowd on the Northwest Stairs, celebrated with Howe on the Upper West Terrace, proceeded to the Ohio Clock Corridor outside the Senate Chamber, and refused to leave despite orders from the police). In fact, the Court considered that Sparks was the first rioter to breach the building only "in context," but also noted that this was not simply a technicality—as the Court found, "the sheer effort it took for you to be one of the first people—to be the first person in, to get all the way through all the barricades and protections for the Capitol that were set up, that was a tremendous effort." *Id.* at 87. Following up with its written order with findings and citations to law and comparator cases, the Court explained in detail why a variance or departure was warranted. ECF 144. The outcome here—a sentence of 53 months for Sparks's efforts at overturning a national election and stopping the country's previously unbroken tradition of the peaceful transfer of power—does not raise a substantial question.

Finally, Sparks asserts that he will appeal his sentence on Eighth Amendment grounds, claiming that it amounts to cruel and unusual punishment because it "created an unjust and unwarranted disparity among offenders convicted of similar offenses." Def. Mtn. at 6. It does not. As Sparks notes, the first step of this inquiry is a comparison between "the gravity of the offense and the severity of the sentence." Def. Mtn. at 7 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010). Sparks's effort to overthrow a free and fair election is among the gravest possible crimes, and a four-and-one-half year sentence is hardly disproportionate. And the Court based its sentencing determination on the sentence imposed on similarly-situated January 6 offenders, including Sparks's own co-defendant, Joseph Howe, who was sentenced to a similar length of time in custody. ECF 82 at 3. This does not raise a substantial question.

8

### D. Sparks Has Not Demonstrated that the Appeal is Likely to Result in a Reduced Sentence to a Term of Imprisonment Less than the Expected Duration of the Appeal Process

Even if Sparks were to prevail on appeal, the remedy would be a re-sentencing on the five counts of conviction, none of which he challenges. Sparks does not assert that he will appeal the Court's calculation of the guidelines, so for purposes of this Motion it is undisputed that his Guidelines offense level is 14, resulting in a sentencing range of 15 to 21 months in custody before any departure or variance.  If Sparks were to prevail on appeal, he would still face a significant custodial sentence even after reversal and remand. Even a sentence of 21 months, within the Guidelines range, is likely less than "the expected duration of the appeal process," 18 U.S.C. 3143(b)(1)(B)(iv). Moreover, this would not result in Sparks's *release* now, but instead in an order that he *report to custody* now and be ordered released "at the expiration of the likely reduced sentence." 18 U.S.C. 3143(b)(1). As the D.C. Circuit held in rejecting a similar motion for release pending appeal by another January 6 defendant, "even if [the defendant] received relief under § 3143(b)(1)(B)(iv), he would begin serving his term of imprisonment and the court would order only that he be released after serving the duration of the "likely reduced sentence." *United States v. Brock*, No. 23-3045, 2023 WL 3671002, at *1 (D.C. Cir. May 25, 2023). And as that case also noted, it is the defendant's burden to demonstrate what that reduced sentence would likely be. *Id*. Sparks has not addressed this factor in any way, let alone made any showing that his sentence would amount to no time in custody.

## **CONCLUSION**

Because Sparks has not met his burden to establish that the required factors make him eligible for release pending appeal, Sparks's request for a stay of execution of his sentence and for release pending appeal must be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ *Emily W. Allen*
EMILY W. ALLEN, Cal. Bar No. 234961
SONIA MITTAL, Il. Bar No. 6314706
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
emily.allen@usdoj.gov
(907) 271-4724